**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>       Plaintiff,<br><br>v.<br><br>Nicole Roberson-Romosz,<br><br>       Defendant. | Crim. No. 08-235 (JRT/JJK)<br><br><br><br><br>**REPORT AND**<br>**RECOMMENDATION** |

Jeffrey S. Paulsen, Assistant United States Attorney, counsel for Plaintiff.

Caroline Durham, Federal Public Defender, counsel for Defendant.

      JEFFREY J. KEYES, United States Magistrate Judge

**I.**     **Introduction**

      This matter is before the undersigned Magistrate Judge on Defendant Nicole Roberson-Romosz's Motion to Suppress Statements, Admissions, and Answers. (Doc. No. 12.) The motion seeks suppression of a statement made by Defendant to law enforcement authorities onsite at the Federal Medical Center in Rochester, Minnesota, ("FMC Rochester") on the grounds that (1) the statement was made without the assistance or benefit of counsel in violation of Defendant's Fifth and Sixth Amendment rights; and (2) the statements was not given freely and voluntarily, thereby violating Defendant's Fourth and Fifth Amendment rights. (Doc. No. 12.) This Court held a hearing on the motion on September 24, 2008, and, at the request of counsel, set a post-hearing briefing schedule. (Doc.

No. 18.) Neither party has submitted post-hearing briefing. Defendant chose instead to submit the issues on the record of the suppression hearing. For the reasons discussed below, this Court finds that the statement was not made in violation of Defendant's right to counsel and was given freely and voluntarily. Therefore, this Court recommends that the motion to suppress the statement be denied.

## II.     Background

At the time of the incident underlying this case, Defendant was employed as a licensed practical nurse at FMC Rochester. (Doc. No. 20, Tr. 7.) She worked in a unit with mentally ill inmates. (Tr. 19.) On October 11, 2007, Office of Inspector General Agent Pamela McCade was investigating an incident in which Defendant allegedly engaged in sexual contact with an inmate at FMC Rochester and introduced contraband to the facility. (Tr. 6.) McCabe was investigating the incident along with another Department of Justice special agent, Patrick Shoemaker, and special investigative agent Todd Miller. (Tr. 7.)

Miller, who is stationed at FMC Rochester, called Defendant to an office for the purpose of conducting an interview. (Tr. 8.) At the time, Defendant was working in a separate part of the facility from the location where the interview was to take place. (Tr. 19.) McCabe testified at some length about the location of various doors within the prison that Defendant would have traversed to come to the office. (Tr. 17-19.) McCabe described that Defendant would have gone through a large, sliding metal door to arrive at the office, meaning that, in order to

leave she would have to go back through that door as well. (Tr. 17.) McCabe also testified about the arrangement of the room when Defendant arrived at the office for the interview. (Tr. 20-21.) McCabe estimated that the office was "medium-sized" with a table and that the room was monitored. (Tr. 20-21.) McCabe recalled that Defendant was seated on the side of the table nearest the door. (Tr. 21.)

At the outset of the interview, McCabe provided Defendant with a voluntary waiver form and explained to Defendant that the interview was voluntary. (Tr. 8.) McCabe testified that, in going over the form with Defendant, she explained that Defendant did not have to answer questions if she did not want to, asked her to read the form completely, and whether Defendant had any questions. (Tr. 9.) McCabe did not recall, however, whether she or any of the other agents present went through the form line-by-line, or word-for-word, with Defendant. (Tr. 14.) The written waiver states that the interview pertained to "allegations regarding an inappropriate relationship with an inmate and introduction of contraband [to FMC Rochester]." (Tr. 8, Ex. 1.) It further states that the interview is voluntary, the employee does not have to answer questions, and that no disciplinary action will be taken against the employee if the employee chooses not to answer questions. (Ex. 1.) The also warns that "[a]ny statement you furnish may be used as evidence in any future criminal proceeding or agency disciplinary proceeding, or both." (Ex. 1.) Defendant signed the waiver form. (Tr. 14; Ex. 1.) Just above Defendant's signature, the form states: "I understand the warnings and

3

assurances state above and I am willing to make a statement and answer questions. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." (Ex. 1.)

Defendant appeared nervous at this initial stage of the interview, but McCabe testified that Defendant was very polite and cooperative throughout the interview. (Tr. 13, 15.) At the beginning of the interview, Shoemaker attempted to make Defendant comfortable with the process by saying something like "It's going to be okay." (Tr. 15.) The interview lasted approximately three hours. (Tr. 11.) Defendant never asked that the interview be stopped. (Tr. 11.) Defendant never asked for a lawyer during the process of the interview. (Tr. 11.) During the two-hour question-and-answer portion of the interview (Tr. 22), Defendant made admissions about a sexual relationship and about introducing contraband to the facility. (Tr. 12.)

Following that portion of the interview, Defendant made a type-written statement. (Tr. 12.) The process of writing the statement took approximately one hour. (Tr. 22.) The statement was completed by McCabe and Defendant together, seated next to one another at a computer. (Tr. 12.) Defendant would indicate to McCabe what it was that Defendant wanted the statement to say, and McCabe would enter that information on the computer. (Tr. 23.) McCabe could not recall whether certain words used in the statement were words upon which Defendant specifically decided or whether they were the product of Defendant indicating what she wanted to say and McCabe helping Defendant with the

precise language that was eventually used. (Tr. 23.) McCabe indicated that she and Defendant went through the statement together line-by-line, and printed out a final copy, which Defendant signed. (Tr. 12, Ex. 2.)

## III. Discussion

Defendant's motion does not identify with any specificity the nature of the claimed constitutional violations. It includes only generic references to violations of the right to counsel and of the voluntariness of the statement. Given this lack of specificity, at the hearing this Court inquired whether the parties wanted to submit written argument. (Tr. 25.) Defense counsel indicated that ten days, including weekends, would be a sufficient time to submit a post-hearing brief, and counsel for the Government requested three days to submit a response. (Tr. 25.) As mentioned above, no post-hearing argument clarifying the nature of Defendant's argument, nor the Government's position, have been submitted in this case. Lacking any argument to evaluate, this Court must identify the nature of Defendant's argument and then evaluate it. The dilemma created by the lack of any argument illustrates why the umpire does not throw the pitch. This Court's impartiality renders it ill-suited to raising and advancing legal arguments or defending against them on behalf of any party. In an abundance of caution, however, this Court has reviewed the record attempting to discern and evaluate the issues apparent on the face of Defendant's motion.

### A. Right to Counsel Issue

Defendant's motion apparently raises an issue regarding Defendant's Sixth Amendment right to counsel.  "'The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State.'" *Beck v. Bowersox*, 362 F.3d 1095, 1100-01 (8th Cir. 2004) (quoting *Maine v. Moutlon*, 474 U.S. 159, 176 (1985)).  After the right to counsel has attached, any waiver of that right "'during a police-initiated custodial interview is ineffective.'" *Id.* at 1101 (quoting *McNeill v. Wisconsin*, 501 U.S. 171, 175 (1991)).  The Sixth Amendment right to counsel generally attaches once the State initiates an adversary proceeding "'by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).  Because no adversary proceedings were initiated in this case at the time Defendant's statements were obtained, this Court concludes that Defendant's Sixth Amendment right to counsel had not yet been triggered.  Therefore, this Court finds no merit to any Sixth Amendment right to counsel claim suggested by Defendant's motion.

Defendant's motion also apparently raises an issue regarding Defendant's Fifth Amendment right to counsel.  "The fifth amendment right to the presence of counsel during interrogation arises when law enforcement officers initiate questioning 'after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way.'" *United States v. Dobbs*, 711 F.2d 84 (8th Cir. 1983) (quoting *Oregon v. Matthiason*, 429 U.S. 492, 494 (1977)).  Indicia of custody include:

6

> (1) whether law enforcement informed the suspect that the questioning was voluntary, and the suspect was free to leave and was not under arrest; (2) whether the suspect had unrestrained freedom of movement during the questioning; (3) whether the suspect contacted the authorities or voluntarily agreed to official requests to answer questions; (4) whether law enforcement employed strong-arm tactics or deceptive stratagems during questioning; (5) whether the atmosphere of the interrogation was police dominated; or (6) whether law enforcement placed the suspect under arrest at the end of questioning.

*United States v. Plumman*, 403 F.3d 919, 924 (8th Cir. 2005).

This Court concludes that Defendant's Fifth Amendment right to counsel did not arise because she was not in custody at the time the interview took place. Defendant was called down to an office to interview while on her job. She was informed by the officers conducting the interview at the outset that the interview was voluntary. She signed a form indicating that she understood that interview was voluntary, that she did not have to answer any questions, and that no disciplinary action would be taken against her if she chose not to answer. The only evidence before this Court was that no threats, promises, or coercion were used to induce Defendant to participate in the interview. The defense questioning on cross-examination of McCabe demonstrated that Defendant had to go through several prison doors to get to the office where the interview was conducted, and that the interview was conducted in a relatively small space in the presence of three officers. But there was no indication that Defendant ever had anything other than unrestrained freedom of movement during the interview, and McCabe testified that if Defendant had refused to participate in the interview,

7

the officers would have left. (Tr. 16-17.) For these reasons, this Court concludes that Defendant was not "in custody" at the time she made her statements, and thus there is no merit to Defendant's apparent argument that she was deprived her Fifth Amendment right to counsel.

### B.     Voluntariness of Statement Issue

Defendant's motion also apparently raises the issue that her statements were not freely and voluntarily given, in violation of her Fourth and Fifth Amendment rights. Although the Defendant's motion cites the Fourth Amendment, this Court cannot discern, on the record before it, how any Fourth Amendment issue has been triggered here.

The Fifth Amendment prohibition against the use of self-incriminating statements in a prosecution applies to statements obtained during custodial interrogation. *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990). If the statement is obtained as a result of custodial interrogation, it cannot be used unless there is a knowing, voluntary, and intelligent waiver of the defendant's *Miranda* rights. *See Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005) ("A suspect may then waive [*Miranda*] rights provided that the waiver is knowing, voluntary, and intelligent."). To the extent that Defendant's motion raises an issue regarding the voluntariness of any waiver of Defendant's Fifth Amendment privilege against self-incrimination, this Court need not reach that issue because it has already determined that Defendant's statement was not made while

Defendant was "in custody."  Therefore, this Court recommends that Defendant's motion be denied.

**IT IS HEREBY RECOMMENDED** that:

(1) Defendant's Motion to Suppress Statements, Admissions, and Answers (Doc. No. 12) be **DENIED**.

Date: November 10, 2008

s/ Jeffrey J. Keyes
JEFFREY J. KEYES
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 21, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.